**ALANNA D. COOPERSMITH, SBN 248447**
Attorney at Law,
717 Washington Street
Oakland, California 94607
T-(510) 628-0596
F-(866) 365-9759
alanna@eastbaydefense.com

Attorney for Defendant
Alfred Sanchez

UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 20-CR-00427 CRB |
| Plaintiff, | |
| vs. | **DEFENDANT ALFRED SANCHEZ'S SENTENCING MEMORANDUM** |
| ALFRED SANCHEZ, | Date: March 3, 2021<br>Time: 10:00 AM<br>Honorable Charles R. Breyer |
| Defendant. | |

## INTRODUCTION

Defendant Alfred Sanchez is a 49-year-old man who will be before the Court to be held accountable for what he has done.  In fashioning an appropriate sentence, the Court should consider not just his transgression, but also the fact that before he relapsed on drugs, and returned to the streets of San Francisco to sell them, he had obtained not just sobriety, but a track record of employment for the first time in his life.

Mr. Sanchez's mother, his girlfriend, his children, a colleague in the music and arts world, and the labor union to which he proudly belongs, will all be standing with him in spirit on March 3, 2021.  The government and defendant will submit that a sentence of 100 months is sufficient, but no more than necessary, to punish him for his offense.

## FACTUAL BACKGROUND

### A.  Mr. Sanchez's Background and Personal History

In 1971, Alfred ("Freddy") Sanchez was born to a mother who was still a child herself.  His mother was 16 years old.  His father was a heroin addict.  When he was four, his parents divorced.  His father continued to use heroin until the day he died, at 51, of an assault.

Freddy saw his father on the street one day when he was 14.  He went up to him and told him he was his son.  His father said he had other things to do, and they never connected.

After leaving his father, his mother soon thereafter met another man.  His mother's boyfriend, Sam Selak, was hostile to Freddy and made clear that he did not want a child around.  Selak was verbally and physically abusive towards Freddy, striking him with his hands or a paddle.  Devastated that his mother did not protect him from her boyfriend, when he was 14 years old Freddy left home.

For a while, he slept at night in a van that was left unlocked behind a music store. Hungry and alone, he cried himself to sleep, until one night he swore to himself that he would never cry about his situation again.  He started spending time in housing projects, and began using marijuana and cocaine to become numb and forget about the separation from his

family. Cocaine transformed him into everything he felt he was not: gregarious, confident, grown up. Addiction happened right away. He overdosed on cocaine for the first time at 16 years old. Not long thereafter, using the type of logic singular to 16-year-olds and addicts, he began using heroin as well, to prevent himself from overdosing on cocaine. Once crystal methamphetamine became available, he began using that, too. Seeking whatever toxic substances he could get his hands on, he began using cocaine, marijuana, heroin, and/or methamphetamine daily.

As a teenage boy, all alone and addicted to drugs, Freddy began selling drugs in order to support himself and sustain his addiction. After leaving high school in the tenth grade, he got a GED degree as a ward at the California Youth Authority. Freddy occasionally found a job, but he could not stay clean, or out of jail, for long. The culmination of two decades of non-violent and drug related crime, he was sentenced to 77 months of prison in 2015 (*USA v. Alfred Sanchez*, 14-00640-CRB.)

**B.  Early Performance on Supervised Release**

Mr. Sanchez was released from prison in February 2019. He lived in a halfway house without incident. He moved from the halfway house to his mother's home in Oakland in June of 2019, and during the first two months at his mother's house, he was subject to location monitoring.

According to every indication, Mr. Sanchez handled the adjustment to the community well. He almost immediately found work as a metal worker at Cable More company in Oakland. By July of 2019, he parlayed his skills as a metal worker by joining Local 377 of the Ironworkers Union, to begin what he hoped would be a satisfying career. He left the house every morning by 6am. He was on the job five days a week, not including overtime. His mother and girlfriend were impressed by his work ethic and attitude. His girlfriend, Lashanda Smith, who previously had dated him casually, also noticed he had the capacity for a committed relationship. She began to let him come by when her 8-year-old and 11-year-

old kids were around.  He cared for the kids when their mother, a medical assistant at Sutter Health, was at work during the pandemic.

A cornerstone of Mr. Sanchez's success was abstinence from drugs.  At Dolan Health outpatient treatment, he participated in group therapy, individual therapy, and random drug-testing, all while holding down a job.  The sense of purpose and regular schedule afforded by his job contributed to his sobriety.  In fact, on July 25, 2019, Probation recommended that the supervised release condition of "twelve (12) months of residential treatment be held in abeyance" and noted that "should Mr. Sanchez require more intensive treatment, this officer will seek placement."  (ECF No. 29.)

### C. Relapse and Commission of this Crime

Mr. Sanchez's solid performance on supervised release began to endure a stress test in early 2020.  He suffered seasonal, weather-related layoffs, followed by a "shutdown" due to COVID-19.  His mother announced that she would be selling her place and moving to Palm Springs, leaving him without a place to live.  In love with his girlfriend and not wanting to blow it, he became embarrassed at the prospect of losing his job and home.

In this trying time, his behavior spiraled downward.  It started with a urinalysis specimen February 5, 2020 that tested positive for cocaine.  It followed with missed testing appointments and falling off the radar, rather than report to Probation as required.

On July 15, 2020, Mr. Sanchez was arrested in the Mission District throwing a bag containing 452 grams of methamphetamine and a pistol.  He is remorseful for his conduct. He knows that he cannot use, even a little bit of drugs.  As soon as he uses a little, it become a lot, and he descends on a path he knows too well, that of selling drugs, avoiding those who care about him, and making reckless decisions.

## ARGUMENT

**I.  A Sentence of 100 Months in Prison is Appropriate and Fair**

On November 23, 2020, Mr. Sanchez pleaded guilty to a two-count information charging him with possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii) and possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). He admitted the violations of supervised release asserted in the amended Form 12 filed on August 21, 2020 in *USA v. Alfred Sanchez*, 14-CR-00640 CRB.

In a plea agreement entered into pursuant to Rule of Criminal Procedure 11(c)(1)(C), the parties have agreed to a sentence of 100 months in prison to be followed by four years of supervised release. The prison sentence will run concurrent to a stipulated term of eighteen months for the supervised release violations in docket 14-CR-00640 CRB. The Probation Department concurs in the disposition, as a downward variance from a Guidelines range of 188-235 months.

### A. The Ninth Circuit Does Not Apply a Presumption of Reasonableness to a Guidelines Sentence

Criminal "punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247 (1949). That requires "the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes, magnify, the crime and punishment to ensue." *Gall v. United States*, 552 U.S. 38, 52 (2007) (quoting *Koon v. United States*, 518 U.S. 18, 113 (1996).

In *United States v. Carty*, 520 F.3d 984 (9th Cir. 2008) (en banc), the Ninth Circuit held that "the district court may not presume that the Guidelines range is reasonable … nor should the Guidelines factors be given more or less weight than any other." *Id.* at 922 (citations omitted). "While the Guidelines factors are to be respectfully considered, they are one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence." *Id.*

In fashioning an appropriate sentence, the court should consider the factors set forth in 18 U.S.C. § 3553(a). The "overarching" goal is to "'impose a sentence sufficient, but not

greater than necessary to accomplish the goals of sentencing, including to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (citing 18 U.S.C. § 3553(a), internal quotation marks omitted).  The District Court is thus not required to use a formulaic approach to produce a mathematical justification for a non-Guidelines sentence.  *United States v. Gall*, 128 S. Ct. 586, 596.  Rather, it must exercise a "reasoned sentencing judgment, resting upon an effort to filter the Guidelines' general advice through § 3553(a)'s list of factors." *Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456, 2469 (2007).  In short, the District Court's duty is to impose the least amount of time necessary to achieve § 3553(a)'s purpose.

### B. Mr. Sanchez's Difficult Childhood, Drug Addiction, and Substantial Strides at Living a Law-Abiding Life All Justify a Downward Variance

Freddy Sanchez raised himself from the age of 14 onward, fleeing abuse at the hands of his mother's boyfriend.  Not only were his basic material needs – food, shelter, medical care, and education – not met.  He was alone and deserted.

Mr. Sanchez has used drugs and dealt them for as long as he can remember.  As he has stated, "Drug addiction is a big part of my life.  I start making bad decisions.  At the time, *in the moment*, I think my decisions are sound.  *I'm high*."

What is tragic about this case, is not just how far Mr. Sanchez fell when he was evading the police and dealing drugs, but how far he had fallen *from*.  He was sober and clean and had secured a job he loved, for the first time in his life.  His girlfriend Lashanda Smith, who knew Freddy for years, but commenced a relationship with him after he was released from federal prison, put it this way:

> When I met up with Freddy in 2019, he was newly released from a long prison sentence.  But this time he was dramatically different.  It took a while for me to believe that this was truly him?  He had his mind made up, he wanted nothing to do with any of things that could be a trigger to

> relapse and revert back to his ways in the past. He got a job for the first time in his life (and showed early everyday), abided by probation rules, started building his credit, and was a responsible and law-abiding citizen. His family saw that he was a changed man, and we all truly believed things were very different and if he kept on living this way, he wouldn't ever go back to jail.

*See* Declaration of Counsel, Exhibit B. His mother, Metia Reilly, who for many years now has had a supportive relationship with her son, also observed the pivotal connection between a job and her son's rehabilitation, noting that "idle hands are the devil's workshop." Declaration of Counsel, Ex. A. Freddy valued the work he had done for the union not just for the money but for the satisfaction and peace that comes from have a purpose and some place to go. By Freddy's account – which is corroborated by his mother, girlfriend, and supervisor – he was one of the first to arrive on the job in the morning.

    Freddy is also an artist. He taught himself how to play the piano and guitar. In addition, he writes and performs rap songs; using the stage name Mousie, he has sold albums and shared songs on YouTube that over the years have garnered millions of views. The songs provide vivid and unsparing details of life on the street.

> Black sheep, bad seed, problem child, rotten apple
> Life of crime feet-first never dibbled and dabbled.
>
> So ended up locked up, didn't take too long
> But in my grandma's eyes, I could never do no wrong.
>
> She would ask me Freddy, when you gonna get it together?
> I would crack a smile and tell her, Grandma I'm doing way better.
>
> But I caught another case, they sent me back to Y.A.
> For 2 years, 8 months, 3 weeks, 6 days.
>
> One day a cop got me out and sent me to the chaplain
> And I knew right away something bad had happened.
>
> He sat me down, told me the news, I covered my face and cried,
> Because I never got a chance to tell my Grandma goodbye.

Mousie, Lost Loved Ones, available here.  A song posted recently on YouTube on March 5, 2020 is a tribute to his committed relationship with his girlfriend.  He confesses, "And I'm sorry, I can't provide all the time what you're deserving.  Have patience, I'm really new to this cause I'm still learning."  Mousie, Thug in Me, available here.[1]

**CONCLUSION**

What Alfred Sanchez has learned from his experience, both the good and the bad, is the powerful hold that addiction has on his potential.  He is remorseful about his behavior and sorry that he let his family, friends, and government down.  His track record of sobriety, employment, and fidelity to family while on supervised release shows that he has the grit and motivation to succeed.  What he lacks is an ability to acknowledge when he is struggling and to seek help from family, friends, or counselors.  He urges the court to impose the agreed sentence of 100 months in prison followed by four years of supervised release.

Dated: February 25, 2021                                         Respectfully Submitted,

                                                                                 /s/ Alanna Coopersmith
                                                                                 Alanna D. Coopersmith
                                                                                 Attorney for Defendant,
                                                                                 Alfred Sanchez

---

[1] Other songs include Northside Soldier, about gang life, and Jimmy, a searing song about a 9-year old boy.